IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| SEOUL SEMICONDUCTOR CO. LTD., | § § | |
| *Plaintiff*, | § § | Civil Action No. 9:07-CV-273 |
| v. | § § | |
| NICHIA CORP.; NICHIA AMERICA CORP.; and DAKTRONICS, INC., | § § § § | JUDGE RON CLARK |
| *Defendants*. | § § | |

## ORDER REGARDING THE ISSUANCE OF A LETTER OF REQUEST TO THE FRENCH GOVERNMENT

Defendants move for the issuance of a Letter of Request to the French Government for discovery from Mr. Roland Lapoux who was involved with the prosecution of the patent-in-suit, United States Patent No. 5,075,742, and prosecuted its French counterpart, French Patent No. 2656955. Specifically, Defendants seek to bolster the evidence for their inequitable conduct defense. Because the court finds that Defendants can acquire much of the desired information through other means, the court will deny Defendants' motion to issue a Letter of Request.

### Background

Plaintiff Seoul Semiconductor Company, Ltd. ("SSC") filed a claim of patent infringement against Defendants Nichia Corporation, Nichia America Corporation, and Daktronics, Inc. (collectively "Nichia"), alleging infringement of U.S. Patent No. 5,075,742 ("the '742 patent"). The court entered a Scheduling Order on March 19, 2008. Doc. #31. Fact

1

discovery is set to close on November 21, 2008, opening expert witness reports are due December 4, 2008, and expert discovery is set to close on January 14, 2009.

## Discussion

1. *Applicable Law*

The Supreme Court of the United States has established that in deciding whether to issue a Letter of Request under the Hague Evidence Convention, a court should "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Societe Nationale Industrielle Aeropospatiale et al. v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 546 (1987). A court must supervise discovery to prevent abuses and minimize the costs and inconvenience to the parties. *Id.* In deciding whether to allow a request the court must consider international comity and "demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operation, and for any sovereign interest expressed by a foreign state." *Id.*

In performing a comity analysis, a court should consider: (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. *Id.* at n. 28.

The Supreme Court did not state which party bears the burden of persuasion. Generally, when the discovery sought appears relevant to the case at hand, a party resisting discovery bears the burden of showing that discovery is unwarranted. *See United States v. Newell*, 315 F.3d 510, 525 (5th Cir.2002); *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir.2001); *Merrill v. Waffle House*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) ("As the party resisting discovery, the burden is on Plaintiffs to clarify and explain their objections and to provide support for those objections."). However, when requesting burdensome discovery from a French citizen, the Supreme Court's policy as articulated in *Societe Nationale Industrielle Aeropospatiale* favors placing the burden on the party requesting discovery. The requestor should not only show why the request is relevant, but also why it is not unduly burdensome to a foreign party.

The court will address comity factors (1) the importance to the litigation of the documents or other information requested and (4) the availability of alternative means of securing the information together and analyze the other factors separately.

2.   *Analysis*

<u>(1) the importance to the litigation of the documents or other information requested and (4) the availability of alternative means of securing the information</u>

Defendants argue that Roland Lapoux "is indispensable to Defendants' defense of inequitable conduct." Def. Mot., Doc. #68, at 4. Defendants indicate that Mr. Lapoux was the prosecuting patent attorney for the French patent and was involved in the prosecution of the '742 patent. Def. Mot., Doc. #68, at 2. Defendants believe that information gleaned from the

3

document request and deposition of Mr. Lapoux will be directly applicable to Defendants' affirmative defense of inequitable conduct.

Defendants indicate that they already received material information about the prosecution of the '742 patent and its French counterpart through the voluntary depositions of the inventors. The inventors indicated that potential prior art was provided to Mr. Lapoux, including an article by Leon Goldstein. Def. Reply, Doc. #74, at 2. Defendants allege that this prior art was never provided to the French or United States patent office, presumably forming the basis of Defendants' inequitable conduct defense. *Id.* at 2-3.

The existence of any potentially material documents and the reasons they were not disclosed to the United States Patent Office could be important to Defendants' inequitable conduct defense. Defendants will not be able to question Mr. Lapoux absent the court compelling him through the use of the Hague Convention. However, Defendants have indicated that they will also depose John Holman, who was the lead attorney prosecuting the '742 patent. Def. Reply, Doc. #74 at 4. He likely possesses much of the information that Mr. Lapoux could divulge regarding Defendants' inequitable conduct defense. There is no showing that the information to be provided by Mr. Lapoux may be critical or compelling. Information directly related to the prosecution of the '742 patent can come from Mr. Holman.

In addition, Plaintiff desires to complete fact discovery by the required date which will not be possible if the court grants Defendants' motion. The court shares Plaintiff's scheduling concern and questions why the Defendants waited until such a late date to ask the court to approve its Letter of Request. The court issues a Scheduling Order to ensure that the case proceeds to a speedy trial and the parties are able to fully prepare their case. Defendants

requested the issuance of a Letter of Request a little more than a month prior to the close of discovery. An insufficient amount of time exists to depose Mr. Lapoux prior to the close of discovery set for November 21, 2008. Defendants' delay in requesting documents from, and deposition of, Mr. Lapoux indicates to the court that they may not be as important as Defendants claim. Therefore, the court finds that these factors cut against granting Defendants' motion.

(2) the degree of specificity of the request

Defendants requested documents that "address whether the claims of French Patent No. 2656955 or U.S. Patent No. 5,075,742 [the patent-in-suit], are valid" and "enforceable." Ex. A [proposed Letter] to Def. Mot., Doc. #68, at Sch. A, Req. Nos. 2, 3. While these broad requests include information concerning an inequitable conduct defense, they cover much more. In his deposition, Mr. Lapoux could be obligated to provide testimony bearing on a number of invalidity defenses, divulge prior art searches performed, and produce attorney-client communications to his employer. This factor favors denying Defendants' motion.

(3) whether the information originated in the United States

Neither party specifically addresses this point. The inventors discovered the subject matter of the patents as part of their work outside the United States. However, the inventors voluntarily agreed to be deposed and divulged prior art they turned over to Mr. Lapoux.

Mr. Lapoux prosecuted the French patent and was involved with the prosecution of the '742 patent. It is not clear whether Mr. Lapoux obtained or used documents for the prosecution of the French patent that originated outside of the United States. At least some of the documents that the inventors did not give to Mr. Lapoux would seem to have originated within

the United States and may be obtained through the deposition of Mr. Holman, the attorney who actually prosecuted the United States patent at issue in this case. Documents related to the prosecution of the French patent and Mr. Lapoux's testimony about the prosecution of the French patent may be material to an inequitable conduct defense of the '742 patent. However, most material information of that defense would come from the files of the inventors and the attorney who prosecuted the '742 patent. In addition, prior art references, whether they originated outside of the United States or not, may be obtained and authenticated without burdening a French citizen with the requests. This factor favors denying Defendants' motion.

<u>(5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located</u>

Defendants argue that the interests of France and the United States would be best served by issuing Defendants' Letter of Request. Defendants suggest that France's interests in protecting its citizens and corporations from abusive, intrusive, and unduly burdensome discovery are satisfied because the document requests and deposition topics proposed by Defendants are allegedly limited in scope and seek documents and personal knowledge which are clearly identified and referenced during discovery. As discussed above, the requests are not so narrowly restricted. Defendants do not controvert Plaintiff's assertion that Mr. Lapoux was employed by an agency of the French government. Compelling broad discovery from an agent or agency of a sovereign nation is not something this court would lightly undertake. In the absence of a showing of both good cause and a lack of alternatives, this factor weighs against Defendants.

Defendants further contend that the United States has an interest in ensuring that defendants in patent infringement cases can gain access to critical documents and knowledge held exclusively by third parties. Plaintiff does not address this point. While the United States has an interest in ensuring that a defendant may have access to critical documents for defendant's defense, in this case, the Defendants may gain evidence through other means that are less invasive to a French citizen, who was evidently employed by, or on behalf of, the French government.

## Conclusion

In sum, the factors favor denying Defendants' motion. Defendants state they would like to obtain information from Mr. Lapoux, but their delay in filing this motion indicates that this information may not really be crucial. Defendants have already obtained information from documents and the depositions of the inventors and may obtain additional information via the deposition of Mr. Holman. Factoring in the cost and delay involved in sending lawyers to France, the court does not find that the likelihood of a just result would be increased by granting the request.

IT IS THEREFORE ORDERED that Defendants' request for the issuance of a letter to France [Doc. #68] is DENIED.

So **ORDERED** and **SIGNED** this **20** day of **November, 2008.**

_____
Ron Clark, United States District Judge